IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WILLIAM GONZALEZ-VAZQUEZ<br><br>Plaintiff<br><br>Vs.<br><br>METROPOLITAN BUS AUTHORITY ("AUTORIDAD METROPOLITANA DE AUTOBUSES").<br><br>Defendant | CIVIL NO.: 17-cv-02191<br><br><br>AMERICANS WITH DISABILITIES ACT; FAMILY AND MEDICAL LEAVE ACT; LAW 44; TORTS.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

**TO THE HONORABLE COURT:**

NOW COMES, the Plaintiff, through its undersigned counsel and very respectfully, PRAYS STATES, and ALLEGES:

**JURISDICTION & VENUE**

1. Plaintiff brings this action under the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA"); the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), and the Commonwealth of Puerto Rico's Law 44, P.R. Laws Ann. tit. 1, § 505 ("Law 44").

2. This Court has jurisdiction pursuant to the following statutes:

    i. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

      ii. 28 U.S.C. § 1343 (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government

      iii. 28 U.S.C. § 1367, which gives the district court supplemental jurisdiction over state law claims.

3. Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) because the events that gave rise to this Complaint occurred in this district.

## PARTIES

4. Plaintiff William González Vázquez is a citizen of the United States and resides In the municipality of Carolina of the Commonwealth of Puerto Rico, which is in this judicial district.

5. Defendant Metropolitan Bus Authority (hereinafter "MBA") is a public corporation and an employer, as defined under the ADA with principal place of business in San Juan, Puerto Rico.

6. The MBA is public corporation created by law for the purpose of, *inter alia*, providing safe and reliable mass public transportation services in the Commonwealth of Puerto Rico, by operating buses and other vehicles.

7. The MBA employs 15 or more employees for each working day each of 20 or more calendar weeks in the current or preceding calendar year.

8. Prior to his termination, Plaintiff had worked at least 1250 hours in a year at the MBA.  The MBA employs at least fifty people in a 75-mile radius.

9. The MBA is a body corporate created to act on its own authority and a public corporation having legal existence and personality separate and apart from those of the Government and from any of the officers thereof.

10. The MBA operates as a private enterprise or business. See, P.R. Laws Ann. tit. 23, § 602.

11. The MBA can sue and be sued independently from the Commonwealth of Puerto Rico.

12. The debts, obligations, contracts, bonds, notes, debentures, receipts, expenditures, accounts, funds, undertakings and property of the Authority, its officers, agents or employees are deemed to be those of the MBA corporation and not to be those of the Commonwealth Government or of any office, bureau, department, commission, dependency, municipality, branch, agent, officer or employee thereof.

13. The MBA, as an entity independent from the Government will not reach the Commonwealth.

14. The MBA is not an arm of the State and does not enjoy Eleventh Amendment Immunity from suit in federal court from any claims under the ADA or under State Law.   See, e.g., Orria-Medina v. Metropolitan Bus Authority, 565 F.Supp.2d 285 (2008).

## BACKGROUND FACTS

15. Plaintiff was terminated on October 28, 2015.

16. On August 22, 2016, Plaintiff timely filed his charge of disability discrimination and retaliation with the equal Opportunity Commission through the

state referral agency of the Commonwealth of Puerto Rico's Department of Labor's Anti-Discrimination Unit.

17. Having exhausted administrative proceedings with the Commonwealth of Puerto Rico the Commonwealth's Anti Discrimination Unit's and Local Coordinator, closed the case and referred the charged to the EEOC who issued a right to sue letter July 25, 2017.

18. Plaintiff has filed this suit 90 days after receipt of his right to sue letter.

19. At the time of his termination, the agreement between the MBA and Plaintiff's union had no specific wavier of Plaintiff's administrative claims under the ADA, the FMLA or any other statute.  Under the Union contract at the time of his termination, there was clear and unmistakable waiver of any federal statutory rights, in preference for arbitration of said statutory rights.

## **GENERAL ALLEGATIONS**

20. Paragraphs 1-10 above are incorporated by reference.

21. Plaintiff became employed as a bus driver by the defendant approximately on or around October 28, 1998.

22. Plaintiff worked continuously as a bus driver for his employer for a period of over 16 years.

23. From February 2013, until the time of his termination by the MBA Plaintiff had an Iron deficiency anemia, produced by a treatable but severe hiatal hernia.

24. As of November 15, 2016, Plaintiff's treating Physician, Dr. Luis A. Román, stated that on May 26, 2015 he treated Plaintiff for a severe hiatal hernia that required plaintiff to be hospitalized on multiple occasions on account of low hemoglobin. Plaintiff had to receive blood transfusions in said hospitalizations. However, Dr. Román stated that at all times during said hospitalizations and treatments plaintiff was functional in his employment.

25. Shortly before his termination the hernia had become acute, causing Plaintiff to be a person with a physical impairment that limited one or more major life activities, or alternatively, was regarded by the MBA as a person having such an impairment.

26. Plaintiffs disability limited his ability to concentrate and work continuously without periods of rest or without medical treatment.

27. Plaintiff supplied his employer with medical excuses of his hospitalizations and absences from which his employer knew of his condition.

28. Plaintiff also told his employer and the Human Resources Department of his chronic condition and on several occasions requested reasonable accommodations to receive treatment and have his absences excused.

29. The MBA no only ignored his request to receive accommodations, but filed charges against plaintiff for his allegedly unexcused absences because they were turned in "late", when he showed up to work on Sunday, when the MBA's administrative offices were closed.

30. Plaintiff also requested flexible working hours and requested to have his medical emergencies excused. However, they all were ignored and rejected by the defendant.

31. Defendant not only rejected plaintiff's requests for accommodations and his requests for leave to receive treatment, but filed charges for absenteeism against the Plaintiff, not only denying plaintiff's requests for accommodation, but retaliating against the Plaintiff because of his requests for leave or reasonable accommodations.

32. On one occasion Plaintiff spoke to MBA Vice President Carlos Martínez and asked him to allow him to work on weekends. Martínez stated he would do so. However, the person authorized to make such accommodation, Defednant's agent, one Ms. Raquel, stated that it could not be done, disallowed the accommodation. and Plaintiff was denied the schedule change in order to attend his treatments.

33. Defendant's agent, one Ms. Dora Pares ordered plaintiffs termination upon filing of charges pursuant to a collective bargaining agreement because she didn't want to have sick people working for the MBA.

34. Dora Pares not only ordered Plaintiffs' termination but was also Defendant's star witness and promoter of charges against the Plaintiff, testified at plaintiffs termination hearing. Ms. Pares stated, among other things, that plaintiff's absences were unexcused, and completely ignored his requests for accommodations and leave for treatment.

35. Ms. Pares also rejected the medical excuses for Plaintiff's absences providing different pretexts for which she would not accept them.

36. Plaintiff was also regarded by his employer to be a person having an impairment because he was subject to termination because of an actual or perceived physical impairment, whether or not such impairment limited or perceived to limit a major life activity. In short, Plaintiff was considered to be a "sick person" that could not work for the Defendant. However, his requests for accommodations and leaves went unanswered and instead he was terminated because he was perceived to be a sick person.

37. On several occasions plaintiff requested several leaves of absences to undergo treatments for his condition. Many such leaves were rejected by Defendant because the were allegedly filed late according to allegedly strict deadlines imposed by to the Union's collective bargaining agreement.

38. Plaintiff was terminated ignoring his requests for accommodations and for leaves of absences for his hospitalizations.

39. At several times plaintiff stated that he could perform the work if given regular rest breaks between his assigned routes and times in the week to undergo therapy.

40. Plaintiff also presented the MBA with evidence of his medical appointments to treat his conditions and to justify his absences.

41. Defendant denied plaintiff such absences on grounds that the excuses were presented late, in spite of the fact that on the days he presented

7

the excuses were Saturdays, days in which he returned to work. Such excuses were not accepted on the pretext that they were not filed during regular work days and not within the very strict time limitations required by the MBA.

42. The medical excuses and leave requests were rejected because plaintiff was considered a "sick person" and the AMD did not want to deal with sick workers.

43. Plaintiff requested on numerous occasions to be accommodated because of his disability and shortly thereafter he was charged with abandoning his post because of allegedly unexcused absences, when in reality he was discharged because he was disabled or regarded as disabled.

## CAUSES OF ACTION

## COUNT ONE:

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

44. Plaintiff incorporates by reference all the preceding paragraphs of this complaint.

45. Plaintiff William Gonzalez has a physical impairment during the events of this case, as an impairment is defined under the ADA.

46. The decision of Narciso de Jesus Cardona, upon testimony and promotion of Dora Pares, as expressed to Plaintiff in letter of termination dated October 28, 2014, stating that Defendant had terminated Plaintiff, instead of accommodating him or granting his requests for leave, was made in the line and scope of Plaintiff's employment of Plaintiff with the MBA.

47. Both Narciso de Jesus Cardona and Dora Pares had authority from Defendant to request plaintiff's termination and reject his requests for reasonable accommodation.

48. In recommending that plaintiff's absences be treated as unexcused and deciding not to accommodate plaintiff, Narciso de Jesús Cardona and Dora Pares were speaking on behalf of the Defendant.

49. At no time did defendant ever attempt to engage the Plaintiff in an interactive dialogue to determine how to accommodate plaintiff under the ADA nor were any independent medical examinations performed on the Plaintiff or any requested by the Defendant.

50. Defendant ignored Plaintiff's request for accommodation by failing to address his request, failing to engage plaintiff in any dialogue to accommodate him, regarded plaintiff as a "sick person", and regarded the Plaintiff as impaired or disable individual.

51. Defendant further retaliated against the Plaintiff, when it initiated disciplinary proceedings following plaintiff's requests for accommodations, and terminated plaintiff shortly thereafter requesting accommodations and requests for leave to receive medical treatment and invoking his rights under the ADA.

52. Plaintiff made a good faith request for accommodation of his disability to the MBA.

53. Plaintiff suffered adverse action, namely termination, shortly after making requests for accommodation.

54. As a result of plaintiff's termination plaintiff suffered damages, including the loss of salary, benefits and loss of medical insurance to treat his condition, as a result of his termination.

## COUNT TWO:

## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

55. Plaintiff incorporates all the preceding paragraphs of this complaint.

56. Plaintiff was entitled to leave to attend a serious health condition while working for the MBA.

57. Defendant MBA knew since February 26, 2013 that defendant suffered from iron deficiency Anemia due to chronic blood loss.

58. On several occasions Plaintiff had to undergo emergency treatment and informed his employer of such emergency treatment after receiving the medical condition.

59. Defendant rejected such post emergency leaves on at least three occasions and informed his employer. Nevertheless Plaintiff was progressively disciplined in January, February and March of 2015, notwithstanding his request for leave and notice of the chronic health condition requiring intermittent leave.

60. Plaintiff's termination took into account those disciplinary warnings of January, February and March, 2015.

61. During period beginning on or around February 26, 2013 and after his termination with the MBD  Plaintiff had a serious health condition that made him unable to perform every day the functions of his position without the requested intermittent emergency leave.

62. At all times during which discipline was brought against Plaintiff for being absent, after February 26, 2013, defendant knew plaintiff had an illness, that required continuing treatment by a health care provider since his doctor informed the MBA he had "chronic blood loss".

63. Chronic anemia is a serious health condition that may create leave rights under the FMLA.

64. As of February 26, 2013 plaintiff put the MBA on notice of probable basis for FMLA leave. Subsequent notices were made on further dates.

65. Plaintiff did not write a brief to the MBA demonstrating legal entitlement to leave because of his chronic blood loss. However, Plaintiff informed the MBA on several occasions on his need for treatment and gave the MBA enough information to establish probable cause to believe that employee is entitled to FMLA intermittent and post treatment notice.

66. The MBA did not request such additional information from employee's doctor or some other reputable source as may be necessary to confirm employee's entitlement.

67. The MBA obviously knew of Plaintiff's anticipated leave to treat his serious health condition and that he would be on leave. He further provided the MBA, post treatment leave, but such leave was rejected because it did not comply, allegedly, with the union contract.

68. Plaintiff sought leave, and employer, in spite of knowing of Plaintiff's Chronic Health condition and chronic bleeding, rejected his leave and instead subjected plaintiff to discipline and terminated plaintiff.

69. Plaintiff was denied the right to seek intermittent leave to treat his chronic condition.

70. The MBA never required a second opinion from a health care provider not regularly employed by the employer to determine if the plaintiff was not entitled to the leave he requested.

71. In requesting leave Plaintiff engaged in statutorily protected conduct by informing the MBA of the reasons for his leave and the approximate duration of his intermittent treatments.

72. Following he requests for intermittent leave plaintiff was brought up on charges and terminated.

73. Plaintiff was denied leave because he was considered, after his request for leave taken, a sick person. The consideration of plaintiff as a sick person was a substantial factor in the termination decision by the Defendant.

## COUNT THREE:

## VIOLATIONS OF LAW 44

74. Plaintiff incorporates all the preceding paragraphs of this complaint.

75. Puerto Rico Law 44, P.R. Laws Ann. tit. 1, § 505 is an employment disability discrimination statute of the Commonwealth of Puerto Rico, which incorporates by reference all the "the remedies, powers, and procedures" established in Law 100 P.R. Laws Ann. tit. 29, § 146 (the general employment discrimination statute). Since the First Circuit has ruled in <u>Ruiz Rivera v. Pfizer Pharmaceuticals</u>, 521 F.3d 76, 87 (1st Cir. 2008) that Law 44 is "the Puerto Rico analogue to the ADA" all averments made with respect to the ADA in this

complaint under Count One, are incorporated by reference in count three, as if alleged under Law 44.

REQUEST FOR REMEDIES

WHEREFORE, these premises considered, Plaintiff requests the following:

A. That the Court issue an order declaring that defendant's actions violated the ADA the FMLA and Commonwealth Law 44;

B. That the Court grant plaintiff a permanent in injunction enjoining the Defendant, his agents, employees, successors, and those acting in concert with the Defendant from continuing to violate plaintiff's rights under the ADA;

C. That the Court enter an Order requiring Defendant to make Plaintiff whole by placing Plaintiff in the position he would have occupied in the absence of discrimination, providing back pay with interest, and ordering Defendants to pay liquidated, compensatory, and punitive damages as a jury may assess;

D. Interest may also be awarded for the amount determined on the amount of wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violations;

E. That the order to defendant or its agents restore plaintiff to his position, or an equivalent one with equal pay and benefits, and restore Plaintiff's medical benefits and insurance and grant him

intermittent leave to treat his chronic condition until it may be in remission;

F. Double damages with respect to Plaintiff's Law 44 claims, as provided by Law 100.

G. That the Court award such other legal and equitable relief as justice requires including but not limited to, an award of costs, attorney's fees and other expenses as allowed by statute.

H. Plaintiff at present estimates the amount of monetary relief requested to be at least $800,000.00.

I. Plaintiff requests trial by struck jury.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, September 11, 2017.

s/: Edelmiro Salas González
USDC 218004
1072 Calle 17, Urb. Villa Nevarez
San Juan, Puerto Rico 00927
Tel. (787) 376-4659
Fax. 1-866-583-2843
esalas@me.com